James K. Lubing, WY Bar No. 5-2284
Leah K. Corrigan, WY Bar No. 6-4492
Pamela T. Harvey, WY Bar No. 6-4052
LUBING & CORRIGAN, LLC
P.O. Box 3894
Jackson, WY 83001
(307) 733-7242 – Telephone
(307) 733-7471 – Facsimile

*Attorneys for Defendant, CDK, Inc. &
Thompson, Palmer & Associates, CPA*

**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF WYOMING**

| | | |
|---|---|---|
| **SHIRLEY M. JOHNSON** | ) | |
| **Plaintiff,** | ) | |
| vs. | ) | **Civil Action No.: 10-CV-279D** |
| **CARL D. KING,** | ) | |
| **Defendant.** | ) | |

---

**COMBINED OPPOSITION OF CDK, INC. & THOMPSON PALMER & ASSOCIATES, CPA TO PLAINTIFF'S MOTIONS TO COMPEL PRODUCTION OF DOCUMENTS**

---

COMES NOW CDK, Inc. and Thompson, Palmer & Associates, CPA, by and through undersigned counsel, and, pursuant to Fed. R. Civ. P. 45, hereby oppose Plaintiff's motions to compel, filed April 22, 2011[1] for the following reasons:

(1) On or about January 24, 2011, David DeFazio of the Defazio Law Office,

[1] Plaintiff filed motions to compel against CDK, Inc. [DOC #40] and Thompson, Palmer & Associates, CPA [DOC #41] on April 22, 2011. Since almost exactly the same documents were requested from both of these entities and the arguments against producing the requested documents are the same for both entities, counsel for Defendant has filed this combined opposition to Plaintiff's motions to compel.

filed an Answer, Affirmative Defenses and Counterclaims [DOC #3] on behalf of Defendant in this matter.

(2) Thereafter, on March 2, 2011, Defendant's then counsel, David DeFazio, voluntarily moved to dismiss the counterclaims filed on behalf of Defendant on without prejudice [DOC #19].

(3) By Order dated March 22, 2011 [DOC #25], Defendants' counterclaims were dismissed without prejudice, leaving only certain affirmative defenses, which included, but were not limited to, payment, fraud, misrepresentation and failure of consideration.

(4) Also on March 22, 2011, Plaintiff issued subpoenas to CDK, Inc.[2] and Thompson Palmer & Associates, CPA ("Thompson Palmer")[3], seeking production, by April 4, 2011, of "[a]ll financial documents and records relating to CDK, Inc., f/k/a JPAW, Inc. ("CDK") and/or Johnson Amusement Parks, Inc. ("JAP") from January 2001 to the present. . . ."

(5) On or about March 30, 2011, counsel for Defendant, and others, contacted the law firm of Lubing & Corrigan, LLC to defend CDK, Inc. and Thompson Palmer in connection with the subpoenas issued by Plaintiff on March 22, 2011.

(6) On April 3, 2011, undersigned counsel filed motions to quash the March 22, 2011 subpoenas directed to CDK, Inc. [DOC #27] and Thompson Palmer [DOC #28] the on the grounds that they were improperly noticed and served.

(7) The following day, April 4, 2011, Plaintiff again issued subpoenas directed to

[2] CDK, Inc. is a Wyoming corporation currently owned and operated by Defendant Carl King and formerly known as JPAW, Inc.

[3] Thompson, Palmer & Associates, CPA are accountants for CDK, Inc.

CDK, Inc. and Thompson Palmer (hereinafter, collectively, the "Subpoenas").[4] Both Subpoenas seek production of the following information:

> "[a]ll financial documents and records relating to CDK, Inc., f/k/a JPAW, Inc. ("CDK") and/or Johnson Amusement Parks, Inc. ("JAP") from January 2001 to the present, including, but not limited to balance sheets, profit and loss statements, income tax returns, cash flow statements, financial projections and budgets, checking account statements and cancelled checks (if available) and all documents evidencing payment, distribution or transfer of any funds or assets to or from CDK and/or JAP and/or any of their principals, owners, shareholders, officers, directors, employees or agents. This subpoena includes (but is not limited to) any communications, including correspondence, letters, memos, notes, e-mails, facsimiles and phone records relating to the previously described financial documents and records." (Exh. A – The Subpoenas (4/4/11))[5].

True and correct copies of the Subpoenas are attached hereto as Exhibit A.

(8) On April 8, 2011, undersigned counsel objected to the Subpoenas on various grounds. (Exh. C – Ltr. from Harvey to Potter (4/8/11)). On the same day, undersigned counsel also agreed to represent Defendant King in this lawsuit.

(9) Thereafter, the parties to this litigation continued to meet and confer in an attempt to resolve their differences concerning the documents requested in the Subpoenas. To this end, correspondence was exchanged and several telephone conferences took place. (Plaintiff's Motion to Compel, ¶ 6-9).

(10) On April 16, 2011, defense counsel Leah Corrigan issued a letter to

---

[4] Plaintiff's counsel also issued a subpoena to Wells Fargo Bank, N.A. seeking the following information:

> All financial documents and records relating to credit, loan, letter of credit, bond or other borrowing or lending arrangements with Carl D. King from January 2004 to the present, including but not limited to appraisals, financial statements, credit or loan applications, loan and/or security agreements (including but not limited to mortgages and UCC-1 financing statements), and records of all funds requested by and/or disbursed to Carl D. King. . . . This subpoena excludes financial documents and records relating to depository, savings or checking accounts of Carl D. King that are unrelated to the credit, loan, letter of credit, bond or other borrowing or lending arrangements described above. (Exh. B – Wells Fargo Subpoena (4/4/11)).

[5] In addition, the subpoena directed to Thompson, Palmer & Associates, CPA, seeks "[a]ll financial documents and records relating to **Carl D. King**" himself. (Exh. A – The Subpoenas (4/4/11)).

Plaintiff's counsel Amy Potter. In this correspondence, Ms. Corrigan reiterated that undersigned counsel was working diligently to get up to speed in this factually complicated case and that a review of the matter to date suggested a need to narrow and refine the theories of defense in this case by filing an amended answer. In addition, Ms. Corrigan voluntarily produced some of the documents requested in the Subpoenas. (Exh. D – Ltr From Corrigan to Potter (4/16/11)).

(11) On April 22, 2011, undersigned counsel responded to Plaintiff's first requests for production of documents. (Exh. E - "Defendant Carl D. King's Responses to Plaintiff's First Set of Requests For Production to Defendant" (4/22/11)). Many of financial documents requested in the Subpoenas were also sought in these discovery requests.

(12) On that same day, April 22, 2011, a conference call took place between attorneys for Defendant, Mr. Lubing and Ms. Harvey, and attorneys for Plaintiff, Ms. Potter and Mr. Ford, however, no further resolution could be reached concerning the documents at issue. Following this conversation, as promised, defense counsel e-mailed a copy of the proposed amended answer and counterclaim to counsel for Plaintiff. (Exh. F – E-mail from Harvey to Potter and Ford and Proposed Amended Answer, Affirmative Defenses & Counterclaim (4/22/11)).

(13) Lastly, also on April 22, 2011, Plaintiff filed their motions to compel against CDK, Inc. [DOC #40] and Thompson Palmer [DOC #41].

(14) On May 4, 2011, Defendant filed a motion for leave to amend his answer [DOC #42]. A true and correct copy of Defendant's proposed "First Amended Answer, Affirmative Defenses & Counterclaim" is attached hereto as Exhibit G.

(15) The parties to this litigation are Plaintiff Shirley Johnson and Defendant Carl D. King. Neither CDK, Inc. nor Thompson Palmer has been named as a party. (Complaint, p. 1) (Exh. G – "First Amended Answer, Affirmative Defenses & Counterclaim" (4/22/11), p. 1).

(15) At issue in this litigation are a promissory note ("Note") and a release ("Release"), both dated June 1, 2008. Pursuant to the terms of the Note, the Defendant agreed to relinquish his 50% ownership share in the company known as Johnson Amusement Parks, Inc. ("JAP, Inc.") and pay Plaintiff $1.5 million dollars in exchange for her 50% ownership share in the company known as CDK, Inc. f/k/a JPAW, Inc. (hereinafter, "CDK f/k/a JPAW") (Exh. G – "First Amended Answer, Affirmative Defenses & Counterclaim" (4/22/11), p. 8-9).

(16) As set forth in Defendant's First Amended Answer, Affirmative Defenses & Counterclaim, Defendant ceased making payments on the Note only upon learning that Plaintiff had concealed an asset of JAP, Inc. and falsely and fraudulently claimed that she was owed $266,500 by CDK f/k/a JPAW prior to and during the negotiations that gave rise to the execution of the Note and the Release. Thus, due to Plaintiff's fraud and deceit, Defendant King's 50% ownership share in JAP, Inc. was greatly undervalued at the time he executed the Note and Release. Consequently, the amount due and owing under the Note should be offset by that amount deemed to represent the damage caused to Defendant King by Plaintiff Johnson's wrongdoing. (Exh. G – "First Amended Answer, Affirmative Defenses & Counterclaim" (4/22/11), p. 5-11).

(17) The information disclosed by Defendant King to date includes all of the financial information concerning JAP, Inc. that he had to consider at the time he

executed the Note and Release, including the Estate Agreement[6] which purportedly listed all assets of JAP, Inc. (*See* Exh. D – Ltr From Corrigan to Potter (4/16/11)) (Exh. G – "First Amended Answer, Affirmative Defenses & Counterclaim" (4/22/11), p. 5-11).

(18) At present, Defendant King resists disclosing all information about his own personal finances between January 2001 and the present, and all financial documents concerning CDK, Inc. f/k/a JPAW between January 2001 and the present, including, but not limited to: (a) information about the amount Defendant King paid for CDK, Inc. f/k/a JPAW, (b) information about the revenues, profits and losses of CDK, Inc. f/k/a JPAW; (c) information about the amount paid for leasing of and improvements to the Flat Creek Inn and Mart; and (d) any communications, including correspondence, letters, memos, notes, e-mails, facsimiles and phone records, relating to CDK, Inc. f/k/a JPAW financial documents and records. For the following reasons, pursuant to Rules 26(b) and 45(c) of the Federal Rules of Civil Procedure, none of this information is discoverable:

**(a) The Requested Documents Are Not Likely to Lead to Discovery Of Admissible Evidence** - The issues in this case are now limited to whether a default on the Note occurred and, if so, why? (Complaint (12/27/10)) (Exh. G – "First Amended Answer, Affirmative Defenses & Counterclaim" (4/22/11)). The information sought cannot assist anyone in answering these questions. Instead, among other things, the

[6] In order to assess the value of JAP, Inc. prior to June 1, 2008, Defendant King relied on the property and assets listed as being owned by JAP, Inc. in the Estate Agreement of December 2007 and the limited JAP documents that he'd been provided to date by Mr. Schlitz. This was the agreed-to method of valuation of JAP, Inc. for the purposes of negotiation by counsel for the respective parties. Plaintiff Shirley Johnson and others executed the Estate Agreement, thereby ratifying that the assets and property listed therein constituted the extent of JAP, Inc.'s assets at that time. (Exh. G – "First Amended Answer, Affirmative Defenses & Counterclaim" (4/22/11), p. 8-11).

request for these documents is geared towards determining whether Defendant King is solvent. Although Plaintiff made a contrary argument in her complaint, the documents produced by Defendant King in his response to Request No. 34 of Plaintiff's production requests clearly indicate that he made every required payment on the Note between July of 2008 and October 2009. (Exh. E – "Defendant Carl D. King's Responses to Plaintiff's First Set of Requests For Production to Defendant" (4/22/11), p. 13). **Thus, the question is not whether Mr. King is able to make payments on the Note, but rather, what information did he learn that caused him stop making payments on the Note? The answer is that Defendant King learned that Plaintiff's fraud, misrepresentation and deceit led him to overpay for his share of JAP, Inc. Nothing in the financial documents or the personal financial documents of Carl King himself will help shed light on the nature and scope of the Plaintiff's wrongdoing in this regard.** Exh. G – "First Amended Answer, Affirmative Defenses & Counterclaim" (4/22/11), p. 5-11). Simply put, prior to a judgment being issued in this case in favor of Plaintiff, there is no reason why the requested documents should be made public or even considered because the solvency of Defendant King and/or CDK, Inc. is not at issue and therefore their financial documents are irrelevant to the claims and defenses pending in this case.

**(b) The Request For The Documents At Issue is Unduly Burdensome and Excessively Expensive** – The Plaintiff has requested CDK, Inc. f/k/a JPAW's financial information for a time period spanning ten years between January 1, 2001 and the present. She has also requested copies of Defendant King's personal

financial information for the same time period.[7] Locating, compiling, copying and producing these records will require a significant amount of time and effort on the part of Thompson Palmer, Defendant's counsel and Mr. King as well, at a cost of at least $250 an hour for Defendant's counsel and $165.00 an hour at Thompson, Palmer. (Exh. H –Palmer Ltr (5/3/11)). Clearly the request for these documents is intended to be and is cost prohibitive for Defendant King. The burden and expense associated with producing these documents outweighs the probative value of their contents. F.R.C.P., Rule 26(b)(2)(C).

**(c) The Request For The Documents At Issue Is Overbroad** – Plaintiff's request for all financial documents of CDK, Inc. f/k/a JPAW and Carl King between January 2001 and the present is absolutely overbroad. Defendant King did not even have any ownership interest in CDK, Inc. f/k/a JPAW until August 2005. Prior to and after purchasing CDK, Inc f/k/a JPAW, Mr. King and Melvin Johnson requested financial documents concerning JAP, Inc. from Joseph Schlitz, but received few if any documents. (Exh. G – "First Amended Answer, Affirmative Defenses & Counterclaim" (4/22/11), p. 7). Nevertheless, the documents that they did receive, and more, have already been produced to Plaintiff. (Exh. D – Ltr From Corrigan to Potter (4/16/11)) (Exh. E - "Defendant Carl D. King's Responses to Plaintiff's First Set of Requests For Production to Defendant" (4/22/11)). Moreover, it was only these previously produced JAP, Inc. documents and the Estate Agreement that Mr. King relied on prior to executing the June 1, 2008 Note and Release. (Exh. G –

[7] Notably, financial records only need be kept for between three and seven years according to the Internal Revenue Service. See http://www.nytimes.com/2010/03/25/your-money/household-budgeting/25RECORDS.html; http://www.irs.gov/businesses/small/article/0,,id=98513,00.html.

"First Amended Answer, Affirmative Defenses & Counterclaim" (4/22/11), p. 8-9). Based on these facts and the remaining issues in this litigation, only JAP, Inc. documents, generated between August 2005 and June 1, 2008, and relied on by Defendant King in considering whether to execute the Note and Release, are discoverable. There is certainly no reason why Defendant King should be required to produce any financial records generated after June 1, 2008, because he would not have relied on such documents in deciding whether to execute the Note and Release.

**(d) The Requested Documents Contain Private Commercial Information –** If Plaintiff's motions are granted and the requested financial information is made public it may jeopardize Defendant King's ability to conduct business competitively in the Jackson, Wyoming area and/or secure financing needed to continue CDK, Inc.'s business operations. It will also give potential buyers of CDK, Inc. global access to the private, financial documents of CDK, Inc. and Carl King personally, which in turn will have a chilling effect on Defendant King's ability to sell the business at a fair, reasonable and competitive price.[8] Accordingly, no financial documents concerning CDK, Inc., and/or Defendant King personally, should be publically released in this forum.

**(e) The Request For These Documents is Cumulative, Duplicative and Constitutes Harassment** – The parties have been litigating issues involving JAP,

---

[8] For example, if Defendant King's personal financial records show that he has little cash, is financially strapped and owes a great deal of money to creditors, and this information is made public in this forum, a savvy potential buyer may be inclined to make a lowball offer to purchase CDK, Inc. simply because he's had access to this information and knows something about Defendant King's personal financial wealth.

Inc. and CDK, Inc. f/k/a JPAW in numerous venues since 2005. There are three lawsuits presently pending involving the parties in some capacity or another, including this case in the U.S. District Court of Wyoming, a second case in the Circuit Court of Door County, Wisconsin[9] and a third case the Ninth Judicial District Court of Teton County, Wyoming[10]. In at least two of these cases, including this one, the Plaintiff has requested production of all financial documents of CDK, Inc. f/k/a JPAW. (Exh. I – Johnson Subpoena - 9th JDDC of Teton County, Wyoming (4/5/11)). Plaintiff's multiple requests for the same documents in different legal forums violates Rule 26(b)(2)(C) in that these requests are cumulative and duplicative. In addition, the Plaintiff's requests for these documents are clearly designed to drain Defendant King financially and constitute harassment, especially in this case where the requested documents are irrelevant to the issues now at hand. *See infra* p. 6-7.

---

[9] This case is entitled *Melvin Johnson, et al. v. Johnson Amusement Parks, Inc., et al.*, Case No. 10-CV-382. In this case Melvin Johnson and Carl King have sued a number of parties, including Shirley Johnson, Pam Johnson, Johnson Amusement Parks, Inc. and Joseph A. Schlitz, for, among other things, theft/conversion, fraudulent concealment, breach of fiduciary duty, negligence, breach of contract and unjust enrichment. Attorney James Ashenbrener is representing Mr. King in this matter.

[10] This case is entitled *Shirley M. Johnson and Johnson Amusement Parks, Inc. v. Melvin J. Johnson*, Case No. 14806. In this case Shirley Johnson is suing Melvin Johnson for breaching his duties as a shareholder of JAP, Inc. prior to selling his 50% share of JAP, Inc. to Carl D. King. Attorney Stefan Fodor has been defending the subpoena issued by Plaintiff Johnson in this case on April 5, 2011 and directed to Thompson Palmer, accountants for CDK, Inc. (Exh. I – Johnson Subpoena - 9th JDDC of Teton County, Wyoming (4/5/11)).

WHEREFORE, for the foregoing reasons, Defendant King respectfully requests the Court to deny Plaintiff's Motion To Compel in their entirety.

DATED this 4th day of May, 2011.

Respectfully submitted,

/s/ Pamela T. Harvey

James K. Lubing, WY Bar No. 5-2284
Pamela T. Harvey, WY Bar No. 6-4052
LUBING & CORRIGAN, LLC
P.O. Box 3894
Jackson, WY 83001
(307) 733-7242 – Telephone
(307) 733-7471 – Facsimile
*Attorneys for Defendant, CDK, Inc. & Thompson, Palmer & Associates, CPA*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on this 4th day of May, 2011, a true and correct copy of the foregoing was served upon the following counsel of record by placing the same in the service indicated and addressed as follows:

| | |
|---|---|
| Glenn Martin Ford<br>Amy Wallace Potter<br>Garland, Ford & Potter, LLC<br>P.O. Box 4310<br>235 East Broadway<br>Jackson, WY 83001<br>Phone: (307) 733-0661<br>Fax: (307) 222-0530<br>E-Mail: apotter@gfattorneys.com<br>*Attorney for Plaintiff* | [ ] U.S. Mail<br>[ ] Hand Delivery<br>[ ] Telefacsimile<br>[ ] Federal Express<br>[✓] CM/ECF |
| James Aschenbrener<br>Aschenbrener Law LLC<br>P.O. Box 245<br>W4890 Bridle Road<br>Sherwood, WI 54169<br>Phone: (920)989-1529<br>Fax: (920)989-1819<br>Email: jim@lawllc.net<br>*Attorney for Defendant* | [ ] U.S. Mail<br>[ ] Hand Delivery<br>[ ] Telefacsimile<br>[ ] Federal Express<br>[✓] CM/ECF |

Becca Puleo, Legal Assistant